IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-856

Filed: 21 March 2017

Mecklenburg County, No. 14 JA 420

IN THE MATTER OF: R.P.

Appeal by respondent from orders entered 2 May 2016 by Judge David Strickland in Mecklenburg County District Court. Heard in the Court of Appeals 20 February 2017.

> *Associate Attorney Christopher C. Peace for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services.*
>
> *Mark L. Hayes for respondent-appellant father.*
>
> *Parker Poe Adams & Bernstein LLP, by Mindy Campo and Maya Engle, for guardian ad litem.*

INMAN, Judge.

Respondent, the father of the juvenile R.P. ("Ricky")[1], appeals from a permanency planning review order and an order appointing a guardian for the juvenile. After careful review, we reverse and remand.

**Factual and Procedural Background**

On 17 June 2014, Mecklenburg County Department of Social Services, Youth and Family Services ("YFS") filed a petition alleging that Ricky, as well as two older

---

[1] Pseudonyms are used to protect the identities of the juveniles and promote ease of reading.

siblings ("Amy" and "Donald")[2], were neglected and dependent juveniles. YFS claimed that it had received a referral on 30 April 2014 stating that respondent and the juveniles' mother had engaged in a physical altercation in which respondent allegedly bit the mother on the leg and struck her face. A warrant was issued for respondent's arrest and it remained outstanding at the time the petition was filed. A social worker met with the mother on 1 May 2014 to discuss the incident. During this meeting, the mother refused to obtain a restraining order against respondent, claiming that respondent "merely needed to be hospitalized involuntarily so that he can again begin taking his medication(s) for his bipolar disorder for which he received disability income." The mother entered into a safety agreement with YFS and claimed not to know of respondent's whereabouts or contact information. Subsequently, however, the mother retrieved Amy from her placement with an aunt and, based on information provided by family members, went to reside with respondent in South Carolina. YFS obtained non-secure custody of Ricky on 17 June 2014 and placed him with his maternal aunt ("Mrs. M.").

An adjudicatory hearing was held on 19 August 2014. Respondent had still not been served with the petition at that time. Based upon an agreement mediated between Ricky's mother, Amy's father, and YFS, the juveniles were adjudicated neglected and dependent. The trial court noted that the adjudication was being "held

---

[2] Respondent is not the father of Amy or Donald and they are not the subject of this appeal.

in abeyance" as to respondent. The court ordered that the permanent plan for Ricky be reunification.

A review hearing was held on 18 November 2014, at which respondent appeared. Respondent was ordered to meet with a social worker and develop a case plan. At a review hearing held on 24 March 2015, the court ordered respondent to be compliant with his mental health treatment, but otherwise continued the plan of reunification.

At permanency planning review hearings held on 23 June 2015, and 7 and 20 October 2015, concerns were expressed regarding possible incidents of domestic violence between respondent and the juveniles' mother. The court advised respondent and the mother that "if no [domestic violence] concerns were raised and there was no 'drama' during this upcoming review period then the Court can begin considering/discussing transition plans." Nevertheless, the court adopted a concurrent permanent plan of guardianship.

In October 2015, an incident occurred between respondent and the mother which led to respondent filing a complaint for a domestic violence protection order ("DVPO"). On 6 November 2016, a consent order was entered granting the DVPO. The DVPO provided that respondent and the mother would have no contact with one another for a period of one year.

A subsequent permanency planning review hearing was held on 9 February 2016. In an order entered on 26 February 2016, the court changed the primary permanent plan for Ricky to guardianship, and changed the secondary concurrent plan for Ricky to reunification. The court found that respondent had made progress on his case plan, but expressed concern about the continued domestic violence between respondent and the mother. The court specifically noted that despite the no-contact provisions of the DVPO, respondent and the mother continued to have contact with one another, and expressed "grave concern regarding the safety of the juveniles when the parents get together." The court further found that Ricky was doing very well with Mrs. M. and it was in his best interests that Mrs. M. be granted guardianship. The court stated that it would proceed with granting guardianship to Mrs. M. at the next hearing. On 2 May 2016, following a hearing held on 17 March 2016, the trial court entered a permanency planning review order and a separate guardianship order placing Ricky in guardianship with Mrs. M. Respondent gave written notice of appeal on 11 May 2016.

**Analysis**

We initially note that respondent filed a petition for writ of certiorari in the alternative seeking review of the trial court's permanency planning review order entered on 26 February 2016. However, in our discretion, we determine it is unnecessary to grant certiorari and deny the petition.

Respondent argues that the trial court erred by granting guardianship to Mrs. M. without first determining that he was unfit or acted inconsistently with his constitutionally protected parental status. We agree.

" '[P]arents have a constitutionally protected right to the custody, care and control of their child, absent a showing of unfitness to care for the child.' " *In re A.C.*, __ N.C. App. __, __, 786 S.E.2d 728, 735 (2016) (citation omitted). "[A] parent may lose the constitutionally protected paramount right to child custody if the parent's conduct is inconsistent with this presumption or if the parent fails to shoulder the responsibilities that are attendant to rearing a child." *Cantrell v. Wishon*, 141 N.C. App. 340, 342, 540 S.E.2d 804, 806 (2000). Prior to granting guardianship of a child to a nonparent, a district court must "clearly address whether [the] respondent is unfit as a parent or if [his] conduct has been inconsistent with [his] constitutionally protected status as a parent[.]" *In re P.A.*, __ N.C. App. __, __, 772 S.E.2d 240, 249 (2015). "[A] trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence." *A.C.* at __, 786 S.E.2d at 733 (citing *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001)).

Here, the trial court's written orders make no reference whatsoever to respondent's constitutionally protected status as a parent, let alone whether he has acted inconsistently with that status or is otherwise unfit to serve as a parent to

Ricky. The guardian ad litem cites the adjudication of neglect and dependency, and argues that "[p]arental conduct that leads to an adjudication of the children as neglected and dependent clearly constitutes 'some showing of unfitness' and is inconsistent with the protected status of parents." However, a finding that a parent is unfit or acted inconsistent with his or her constitutionally protected status is nevertheless required, even when a juvenile has previously been adjudicated neglected and dependent. *See In re D.M.*, 211 N.C. App. 382, 385, 712 S.E.2d 355, 357 (2011) (reversing a custody order where the trial court specifically found that neither parent was unfit and because the trial court failed to make any findings regarding whether the father had acted inconsistently with his parental rights); *In re B.G.*, 197 N.C. App. 570, 574, 677 S.E.2d 549, 552 (2009) (reversing custody order where the district court "failed to issue findings to support the application of the best interest analysis" and stating that "[a]lthough there may be evidence in the record to support a finding that [the r]espondent acted inconsistently [with his constitutionally protected status as a parent], it is not the duty of this Court to issue findings of fact").

We note that respondent failed to raise any constitutional issue before the trial court. We have held that a parent's right to findings regarding her constitutionally protected status is waived if the parent does not raise the issue before the trial court. *See In re T.P.*, 217 N.C. App. 181, 186, 718 S.E.2d 716, 719 (2011) (holding that mother "waived review of this issue on appeal" based on the doctrine that "

'[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal'") (citation omitted). We decline to find waiver here, however, because we conclude that respondent was not afforded the opportunity to raise an objection at the permanency planning review hearing.

The purpose of a permanency planning hearing is to develop a plan "to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(g) (2015). N.C. Gen. Stat. § 7B–906.1(c) additionally provides:

> At each hearing, the court *shall* consider information from the parents, the juvenile, the guardian, any person providing care for the juvenile, the custodian or agency with custody, the guardian ad litem, and any other person or agency that will aid the court's review. The court may consider any evidence, including hearsay evidence as defined in G.S. 8C–1, Rule 801, or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.

N.C. Gen. Stat. § 7B–906.1(c) (emphasis added); *see also In re D.L.*, 166 N.C. App. 574, 583, 603 S.E.2d 376, 382 (2004) (emphasis omitted) ("As no evidence was presented . . . regarding the permanency plan, the trial court's findings of fact are unsupported.").

Here, the trial court determined at the 9 February 2016 permanency planning review hearing that it would "proceed with guardianship at the *next* date." (Emphasis added). At the next hearing, on 17 March 2016, the trial court would not allow any evidence to be presented concerning guardianship, stating that guardianship had

been determined at the prior hearing. Evidence was strictly limited to the issue of visitation. Regardless of the court's intentions, the court did not actually change custody and award guardianship at the subsequent 9 February 2016 permanent planning hearing. Instead, it merely changed the permanent plan for the juvenile, a plan which still included a secondary concurrent plan of reunification. Therefore, it was improper for the court to limit the 17 March 2016 hearing to the issue of visitation. Consequently, because the trial court did not hold a proper hearing, respondent was not offered the opportunity to raise an objection on constitutional grounds. Thus, we conclude that his constitutional argument was not waived.

Accordingly, because the trial court failed to make the required findings of fact discussed herein, the permanency planning review order and guardianship order are reversed.

REVERSED AND REMANDED.

Judges CALABRIA and ZACHARY concur.