IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-744

Filed 7 May 2024

Graham County, No. 21 JA 02

IN THE MATTER OF:  J.O.

Appeal by respondent from order entered 28 April 2023 by Judge Tessa Shelton Sellers in District Court, Graham County.  Heard in the Court of Appeals 2 April 2024.

*Leo Phillips for petitioner-appellee Graham County Department of Social Services.*

*Richard Croutharmel for respondent-appellant.*

STROUD, Judge.

Respondent appeals from a permanency planning order ceasing reunification efforts with her minor child and placing the minor child in guardianship with his foster parents.  Because the trial court's order waived future review hearings and granted guardianship of the child without making findings by clear, cogent, and convincing evidence as required by North Carolina General Statute Section 7B-906.1(n) and left Mother's visitation entirely in the Guardians' discretion, we vacate the order and remand for further proceedings and entry of a new order consistent with this opinion.

## I.    Background

Josh[1] was born in Graham County, North Carolina in March of 2021. On or about 3 March 2021, the Graham County Department of Social Services ("DSS") filed a juvenile petition alleging Josh as neglected and dependent. DSS alleged Josh did not "receive proper care, supervision, or discipline" from Mother and "lives in an environment injurious to" his welfare. While no drug screen was conducted on Mother or Josh at birth, Josh showed signs of drug withdrawal, such as fever and he was "very jittery." DSS identified Mother's felony charge of assault by strangulation and misdemeanor charge of child abuse as to one of her other children in the petition in support of its argument for obtaining custody of Josh. On or about 3 March 2021, the trial court entered an Order for Nonsecure Custody (capitalization altered), finding Josh "is an Indian Child and a member of or eligible for membership in the Eastern Band of Cherokee tribe" and placed Josh with DSS.

After an 18 August 2021 hearing, the trial court entered an adjudication order on 16 November 2021 adjudicating Josh as dependent, keeping Josh in the custody of DSS, and allowing Mother "up to 8 hours of unsupervised visitation with [Josh] on Tuesdays of each week." The trial court concluded that "the Indian Child Welfare Act [("ICWA")] applies in this matter." The disposition hearing was continued to and heard on 7 December 2021, and on 31 January 2022 Josh was ordered to remain in the custody of DSS, with Mother's unsupervised visitation to continue.

---

[1] A pseudonym is used for the minor child.

On 2 August 2022, the trial court held a review hearing and entered an order allowing Mother to continue exercising visitation with Josh and requiring Mother to allow DSS and the Eastern Band of Cherokee Indians ("EBCI") to observe her home to determine its "fitness for visitation." The order required Mother to "allow [DSS] and EBCI into the home every week thereafter until September 6, 2022 to continue to assess the home's fitness[.]" Visitation would continue at DSS until Mother provided her new address to DSS. Further, the visitations between Josh and Mother were to "take place between . . . [M]other and [Josh] only. The maternal great grandfather . . . may be present when visits are occurring in Graham County." The trial court also required Mother to enroll in the "parents as teachers program" and not to "transport [Josh], unless she is in a safe vehicle, with appropriate child safety seats, and the vehicle has passed a safety inspection[.]"

On 5 October 2022, the trial court entered a "Visitation Hearing Order" (capitalization altered), to determine "whether . . . [M]other's visitation should be expanded[,]" but ordered visitation remain the same. Throughout the case, the cleanliness and safety of Mother's home were central issues, as indicated by the exhibits and Mother's own testimony. The trial court found that "Melody Turner, a tendered expert in Indian Culture and Child Rearing" "attempted to inspect [Mother's] trailer a number of times" and during a 25 January 2022 home inspection, found Mother's home "stacked up with boxes and trash filling the living room, kitchen, and the bedroom." Additionally, "[t]he floors were dirty and covered with

trash and bags of stuff from stores where trash was spilling out of the trash cans." Mother was then "provided with a list of things that needed to be cleaned up and addressed" and Mother "failed to comply with the list[.]" DSS and EBCI then attempted to conduct an inspection on 11 May 2022, but Mother cancelled the appointment; on 20 May 2022 an inspection occurred, but Mother "had made little progress on correcting the safety concerns provided to . . . Mother in February." Mother eventually moved to a new apartment after she was evicted from her trailer for reasons which included the major damage she had caused to the trailer. Mother "took a long time to set the apartment up with furniture" and "over time [the apartment] continued to deteriorate" with "clutter and trash . . . continu[ing] to pile up and fill the apartment" and "[t]he kitchen . . . full of things that a busy toddler could find and place that toddler in danger" and "mountains of laundry and trash from food items."

In addition to the housing issues, Mother was ordered "[t]hat visitation shall take place between . . . [M]other and [Josh] only. The maternal great grandfather . . . may be present when visits are occurring in Graham County." Also, the trial court had ordered that Mother's older son, age 18, not to be in contact with Josh, due to the trial court's concern that the other child "has a violent past with a number of concerns by [DSS] for inappropriate behavior including to sexual proclivities toward animals and violent assaults." One of Josh's custodians testified that on at least one occasion she saw Mother, Josh, and Mother's older son together despite the court order

prohibiting the older son's presence.

Finally, the condition of Mother's car was another factor the trial court considered in determining guardianship. Specifically, Mother had "an expired tag and malfunctioning brake lights" and, more relevant to this case, had "massive amounts of trash and food in the car almost covering the child's safety seat in both the front and back portions of the car." While there were other parts of Mother's case plan discussed in the trial court's order, the condition of Mother's housing, concerns involving her older child, and safety and health concerns of her car were the main issues.

On 21 February 2023, the court ordered a continuance for the next permanency planning hearing, which set the new hearing for 8 March 2023. DSS submitted a Court Report prior to the 8 March 2023 hearing which recommended the primary plan be changed to guardianship, and EBCI submitted a report on 2 March 2023 agreeing with the guardianship recommendation.

The matter came for hearing on 8 March 2023, and the trial court entered an order on 28 April 2023 which decreed:

> [T]hat the primary permanent plan be changed to guardianship.
>
> That a guardianship be granted to [Guardians].
>
> That [Guardians] shall be granted the authority to authorize medical, dental, psychiatric, psychological and educational services for [Josh].

That . . . Mother shall have visitation with [Josh] at the discretion of the Guardians.

No further review shall be scheduled at this time.

Mother appeals.

## II.   Indian Child Welfare Act

Mother first argues "[t]he trial court reversibly erred by failing to comply with the procedural requirement of the [ICWA] to make findings of fact by the clear and convincing evidentiary standard." As Mother contends the trial court failed to make findings by clear and convincing evidence, as required by ICWA, she is arguing the trial court failed to follow a statutory mandate. Thus, "the error is preserved and is a question of law reviewed *de novo*." *In re E.M.*, 263 N.C. App. 476, 479, 823 S.E.2d 674, 676 (2019). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.*

ICWA is a federal law which establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." *In re E.G.M.*, 230 N.C. App. 196, 199, 750 S.E.2d 857, 860 (2013) (citing 25 U.S.C. § 1902 (2012) (quotation marks and brackets omitted)). North Carolina statutes and caselaw set specific standards for permanency planning orders. *See In re A.P.W.*, 378 N.C. 405, 410, 861 S.E.2d 819, 825 (2021) ("This Court's review of a permanency planning review order is limited to whether there is competent evidence in the record to

support the findings of fact and whether the findings support the conclusions of law." (citation, quotation marks, and brackets omitted)). But if ICWA also applies to the case, and ICWA sets a higher standard than the North Carolina statutes, the higher standard prevails:

> where the [ICWA] provides a higher standard of protection to the Indian family than is otherwise provided by state law, the ICWA standard prevails. Where applicable state law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under the ICWA, the state law prevails.

*In re E.G.M.*, 230 N.C. App. at 199, 750 S.E.2d at 860 (citations, quotation marks, and brackets omitted). Mother argues that ICWA sets a higher standard for this case, based upon its requirement for a specific finding supported by "clear and convincing" evidence:

> No foster care placement may be ordered in such proceeding in the absence of a determination, *supported by clear and convincing evidence*, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(e) (2023) (emphasis added).

The trial court did not state, either in open court or in the written order, whether its findings were supported by clear and convincing evidence. The only finding addressing the standard was "[t]he court makes these findings in the best interest of the juvenile."

DSS argues the trial court must state that it has applied the standard of clear

and convincing evidence in an adjudication hearing but need not apply the same standard to a permanency planning hearing, and the trial court had previously entered an adjudication order based upon clear, cogent, and convincing evidence. DSS is correct that an adjudication order must be based upon clear and convincing evidence, and the order must so state. *See* N.C. Gen. Stat. § 7B-805 (2023) ("The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence."). "Pursuant to N.C. Gen.Stat. § 7B-807 (2007), the court is required to recite the standard of proof the court relied on in its determination of neglect." *In re A.S.*, 190 N.C. App. 679, 688, 661 S.E.2d 313, 319 (2008), *aff'd per curiam*, 363 N.C. 254, 675 S.E.2d 361 (2009). In contrast, the findings in a disposition order or permanency planning order may be based upon a preponderance of the evidence, *unless* the order waives additional hearings required by North Carolina General Statute Section 7B-906.1(n) and if so, the trial court must then make certain findings by "clear, cogent, and convincing evidence." *See* N.C. Gen. Stat. § 7B-906.1(n) (2023).

But we need not address whether ICWA requires the trial court to state in the order that it made the finding as required by 25 United States Code Section 1912(e) by clear, cogent, and convincing evidence, as North Carolina General Statute Section 7B-906.1(n) requires the findings in the order on appeal to be made by clear, cogent, and convincing evidence as well. *See id.* The trial court's order waived future hearings under North Carolina General Statute Section 7B-906.1(n) and ordered

"guardianship be granted to [Guardians]" and "[n]o further review shall be scheduled at this time." Because the trial court's order waived future hearings, the trial court was required to make specific findings by "clear, cogent, and convincing" evidence under North Carolina General Statute Section 7B-906.1(n):

> (n) Notwithstanding other provisions of this Article, the court may waive the holding of hearings required by this section, may require written reports to the court by the agency or person holding custody in lieu of permanency planning hearings, *or order that permanency planning hearings be held less often than every six months if the court finds by clear, cogent, and convincing evidence each of the following:*
>
> (1) The juvenile has resided in the placement for a period of at least one year or the juvenile has resided in the placement for at least six consecutive months and the court enters a consent order pursuant to G.S. 7B-801(b1).
>
> (2) The placement is stable and continuation of the placement is in the juvenile's best interests.
>
> (3) Neither the juvenile's best interests nor the rights of any party require that permanency planning hearings be held every six months.
>
> (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.
>
> (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.
>
> The court may not waive or refuse to conduct a hearing if a party files a motion seeking the hearing. However, if a guardian of the person has been appointed for the juvenile

and the court has also made findings in accordance with subsection (n) of this section that guardianship is the permanent plan for the juvenile, the court shall proceed in accordance with G.S. 7B-600(b).

*Id*. (emphasis added).

Although the trial court's order did not make the findings required by North Carolina General Statute Section 7B-906.1(n), the trial court ordered that "no further review shall be scheduled at this time," effectively waiving permanency planning review hearings every six months as required by North Carolina General Statute Section 7B-906.1(a). *See* N.C. Gen. Stat. § 906.1(a) (2023) ("Review or permanency planning hearings shall be held at least every six months thereafter [the initial permanency planning hearing].").  In addition, the trial court granted guardianship to Guardians and left visitation with Mother entirely to their discretion.  Based upon the evidence and record before the trial court, the trial court could have made findings as required by North Carolina General Statute Section 7B-906.1(n), but we cannot determine from the order exactly what the trial court intended to do.

Therefore, as the trial court was required to use the clear and convincing standard under North Carolina General Statute Section 7B-906.1(n), and the trial court did not recite the standard in open court or in its written order, we must vacate and remand for the trial court to make appropriate findings under the clear and convincing evidence standard.

### III.  Constitutionally Protected Status as a Parent

Mother next argues that "[t]he trial court reversibly erred by placing Josh in the guardianship of the foster parents without making a finding that . . . Mother was unfit or that her conduct had been inconsistent with her constitutionally protected status as a parent."

"Parents have a constitutionally protected right to the custody, care and control of their child, absent a showing of unfitness to care for the child." *In re R.P.*, 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017) (citation, quotation marks, and brackets omitted). Further, "[p]rior to granting guardianship of a child to a nonparent, a district court must clearly address whether the respondent is unfit as a parent or if his conduct has been inconsistent with his constitutionally protected status as a parent." *Id.* (citation, quotation marks, and brackets omitted). Finally, "a parent's right to findings regarding her constitutionally protected status is waived if the parent does not raise the issue before the trial court." *Id.* at 304, 798 S.E.2d at 430-31 (citation omitted). "We review a conclusion that the natural parent's conduct was inconsistent with her constitutionally protected right de novo, and determine whether it is supported by clear and convincing evidence." *In re B.R.W.*, 278 N.C. App. 382, 392, 863 S.E.2d 202, 211, *aff'd*, 381 N.C. 61, 871 S.E.2d 764 (2022) (citation, quotation marks, and brackets omitted).

While Mother did not explicitly raise a constitutional objection at the permanency planning hearing, she argues (1) she was not afforded an opportunity to raise an objection at the hearing, citing *In re R.P.*, 252 N.C. App. 301, 798 S.E.2d 428

- 11 -

(2017), or (2) "Mother did object with her testimony and arguments requesting the trial court return custody of Josh to her." In *R.P.*, this Court held the father's failure to object did not waive his right to challenge the constitutional finding since "the trial court determined at the 9 February 2016 permanency planning review hearing that it would 'proceed with guardianship at the *next* date.'" *Id.* at 305, 798 S.E.2d at 431 (emphasis in original). Despite this determination, "[a]t the next hearing, on 17 March 2016, the trial court would not allow any evidence to be presented concerning guardianship, stating that guardianship had been determined at the prior hearing" and the 17 March hearing was "strictly limited to the issue of visitation." *Id.* But here, Mother was not prevented from presenting evidence concerning guardianship and she had notice of the recommendations from DSS and EBCI to grant guardianship to Guardians prior to the hearing.

Our Supreme Court has recently addressed the issue of preservation of a constitutional argument as to the parent's right to custody of a child. *See In re J.N.*, 381 N.C. 131, 133-34, 871 S.E.2d 495, 497-98 (2022); *see also In re J.M.*, 384 N.C. 584, 603-04, 887 S.E.2d 823, 835-36 (2023). In *In re J.N.*, the respondent argued his constitutional argument was automatically preserved. *See In re J.N.*, 381 N.C. at 133, 871 S.E.2d at 497. The Court held the issue was not automatically preserved for appellate review and the respondent had notice the hearing was for the purpose of changing the primary plan from reunification to guardianship since "DSS filed a court report in which it stated that reunification was not possible" and recommended

guardianship; DSS also specifically argued at the hearing guardianship was proper.

*Id*. at 133, 871 S.E.2d at 498. Finally, the Court held

> [i]n turn, respondent's argument focused on the reasons reunification would be a more appropriate plan. Despite having the opportunity to argue or otherwise assert that awarding guardianship to the maternal grandparents would be inappropriate on constitutional grounds, respondent failed to do so. Therefore, respondent waived the argument for appellate review.

*Id*.

In *In re J.M.*, our Supreme Court similarly held

> the guardian ad litem filed a report prior to the permanency planning hearing recommending that reunification be removed as the primary plan inasmuch as the cause of Nellie's injuries remained unexplained. When the trial court announced at the hearing that it was contemplating eliminating reunification from the permanent plan, it gave the parties a thirty-minute recess to consider their responses. Notwithstanding the pre-hearing notice that reunification would be on the table and the 30-minute recess, respondents at no point during the permanency planning hearing argued that the proposed changes to the permanent plan would be improper on constitutional grounds. Consequently, they did not preserve the issue for appellate review.

*In re J.M.*, 384 N.C. at 604, 887 S.E.2d at 836 (citation, quotation marks, and brackets omitted).

Here, DSS filed a Court Summary for the scheduled 21 February 2023 court

date with the following "Summary and Recommendations:[2]"

> 1. That the Permanent Plan be changed to Guardianship with a Concurrent Plan of Custody at this time;
>
> 2. That Guardianship be granted to the current placement providers . . . at this time;
>
> 3. That [Guardians] shall be responsible for the placement and care of the juvenile and shall provide or arrange for the physical placement of the juvenile in their discretion;
>
> 4. That [Guardians] be granted the authority to authorize necessary medical, dental, psychiatric, psychological, and educational or assessment services for the juvenile;
>
> 5. That . . . [DSS] has made reasonable and active efforts to return the juvenile to the home;
>
> 6. That the return of the juvenile to the home at this time would be contrary to his best interest;
>
> 7. That if Guardianship is granted at this time, that visitation with . . . Mother occur at the discretion of Guardians and that . . . Mother comply with orders of the court.

In addition, EBCI presented a report dated 2 March 2023 for the hearing and stated in its "Summary and Recommendations" (capitalization altered) that "[t]he Tribe agrees with [DSS] recommendations to change the permanency plan to Guardianship with [Guardians]."

Mother had an opportunity to raise her constitutional argument for the same reasons as the respondents in *In re J.N.* and *In re J.M.* since DSS and EBCI both filed

---

[2] The hearing date was continued by order of the trial court and the hearing was ultimately held on 8 March 2023.

IN RE: J.O.

*Opinion of the Court*

court reports recommending Josh be placed in guardianship with the foster parents and specifically argued in support of this recommendation at the hearing. *See In re J.N.*, 381 N.C. at 133-34, 871 S.E.2d at 497-98; *see also In re J.M.*, 384 N.C. at 603-04, 887 S.E.2d at 835-36. Further, while Mother testified extensively, presented her own witnesses, and her counsel argued during closing arguments "I believe that changing the plan [from reunification to guardianship] at this point in time based on all of her progress would, would be a miscarriage of justice for her when she has worked so hard to . . . get this child back in her life[,]" she did not contend guardianship would be improper on constitutional grounds or that Mother was a fit and proper parent. While this Court has previously considered these actions by Mother as sufficient to preserve her constitutional argument, *see In re B.R.W.*, 278 N.C. App. 382, 397, 863 S.E.2d 202, 214, *aff'd*, 381 N.C. 61, 871 S.E.2d 764, our Supreme Court's most recent cases hold that where the respondent-parent has notice prior to the hearing that the trial court will be considering a recommendation to grant guardianship of the child, the respondent-parent must make a specific constitutional argument regarding her parental rights before the trial court to preserve a constitutional argument on appeal. *See In re J.N.*, 381 N.C. at 133-34, 871 S.E.2d at 497-98; *see also In re J.M.*, 384 N.C. at 603-04, 887 S.E.2d at 835-36. Thus, we hold Mother failed to preserve her argument as to her constitutionally protected status as a parent and decline to address this issue.

## IV. Visitation

- 15 -

Finally, Mother argues "[t]he trial court abused its discretion by ordering . . . Mother's visits with Josh be in the discretion of the guardians." DSS concedes Mother is correct, and we agree.

A dispositional order is reviewed for an abuse of discretion. *See In re S.G.*, 268 N.C. App. 360, 374, 835 S.E.2d 479, 489 (2019). Under North Carolina General Statute Section 7B-905.1,

> (a) An order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation. The court may specify in the order conditions under which visitation may be suspended.
>
> . . . .
>
> (c) If the juvenile is placed or continued in the custody or guardianship of a relative or other suitable person, any order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised. The court may authorize additional visitation as agreed upon by the respondent and custodian or guardian.

N.C. Gen. Stat. § 7B-905.1 (2023).

Here, the trial court ordered Mother to have "visitation with the juvenile at the discretion of the Guardians." As the trial court provided no conditions as to visitation, including the frequency and length of visitations, and whether they will be supervised or unsupervised, we remand this issue to the trial court. *See id.*; *see also In re J.D.R.*, 239 N.C. App. 63, 76, 768 S.E.2d 172, 180 (2015) ("In the present case, we find that

the trial court impermissibly delegated its judicial function to [the f]ather. . . . Therefore, we remand in order that the trial court can make findings and conclusions relating to visitation rights that comport with this opinion.").

## V.    Conclusion

Mother also raised other arguments on appeal, including that the trial court failed to make the statutorily required findings to place Josh in guardianship and to cease reunification efforts.  Since we have already determined we must vacate the trial court's order and remand for entry of a new order as discussed above, we need not address Mother's arguments regarding cessation of reunification efforts.  On remand, the trial court shall enter a new order stating the standard of clear and convincing evidence for any findings as required by ICWA under 25 United States Code 1912(e), and North Carolina General Statute Section 7B-906.1(n).  In addition, the trial court shall set out the specific frequency and duration of any visitation and whether visitation will be supervised or unsupervised.  On remand, the trial court shall hold a hearing prior to entry of the new order to receive evidence as to the current circumstances as relevant to the new order.

VACATED AND REMANDED.

Judges TYSON and GORE concur.