IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-47

Filed 3 December 2024

Pitt County, Nos. 19 JA 107-08

IN THE MATTER OF: T.S., III & M.S.

Appeal by Respondent-mother from order entered 5 October 2023 by Judge Wendy S. Hazelton in Pitt County District Court. Heard in the Court of Appeals 21 November 2024.

*Miller & Audino, LLP, by Jay Anthony Audino, for petitioner-appellee Pitt County Department of Social Services.*

*GAL Appellate Counsel Matthew D. Wunsche for guardian ad litem.*

*Anné C. Wright for respondent-appellant mother.*

TYSON, Judge.

Respondent-mother appeals from a permanency planning order, which granted guardianship of her minor children T.S., III ("Thomas") and M.S. ("Marcus") to their paternal grandmother ("Grandmother"). *See* N.C. R. App. P. 42b (pseudonyms used to protect the identity of minors). We vacate and remand.

## I. Background

The Pitt County Department of Social Services (DSS) filed petitions on 26 July 2019 alleging three-year-old Thomas and four-year-old Marcus were neglected juveniles. After noting Respondent-mother's history with DSS dating back to September 2013, DSS alleged it had received two recent reports: a report on 16 April

2019 claiming the children were left alone in the care of their seven-year-old sibling, A.S., while Respondent-mother picked up her boyfriend from jail, and a report on 4 June 2019 alleging improper care and supervision. Although the underlying juvenile neglect proceeding also involved Thomas and Marcus' siblings A.S. and I.S., the order on appeal only addresses the guardianship disposition of Thomas and Marcus.

After investigation of the April report, Respondent-mother was arrested for four counts of misdemeanor child abuse or neglect. Thomas and Marcus were placed with their maternal aunt in a temporary safety placement. DSS also alleged the children had consistently missed routine health appointments and were not being treated for possible developmental delays.

On 30 December 2019, the trial court entered an order adjudicating Thomas and Marcus as neglected juveniles and placed them with their paternal aunt and uncle. The trial court found Respondent-mother had made progress on her case plan by completing a mental health and substance abuse assessment by "taking online classes[,]" but she had not attended her psychological evaluation appointment, had been arrested for failing to appear for the misdemeanor child abuse charges, was unemployed, had only attended one therapy appointment, and she had not maintained visitation with the boys.

The court ordered Respondent-mother to participate in mental health treatment, complete a parenting program, submit to a substance abuse assessment, receive substance abuse treatment, follow the terms of her parole, and obtain and

maintain stable employment. The trial court awarded joint legal custody of Thomas and Marcus to their aunt and uncle and Respondent-mother and further awarded Respondent-mother supervised visitation with her boys for one hour per week.

The trial court entered a three-month review order on 25 March 2020, in which it found Respondent-mother had failed to complete substance abuse treatment, maintain her sobriety, complete a psychological evaluation, and consistently visit with the children. As a result, the court continued Thomas and Marcus' temporary placement with their aunt and uncle.

The trial court entered a permanency planning order on 6 August 2020, maintaining the boys' placement with their aunt and uncle due to Respondent-mother's visitation issues and failure to comply with her case plan. The court set a primary plan of custody with a relative and secondary plan of reunification and again the court ordered respondent-mother to complete her case plan requirements.

The trial court entered another permanency planning order on 30 March 2021, in which it found Respondent-mother had continued to make progress on elements of her case plan, but she had not completed a mental health assessment or taken a recent drug test, and she was not regularly visiting with the children. The court changed the primary permanent plan to guardianship with a relative with a secondary plan of custody with a relative and awarded guardianship of Thomas and Marcus to their aunt and uncle. The court directed no further review hearings would

occur unless sought by the motion of a party and relieved DSS, the guardian *ad litem* (GAL), and Respondent-mother's appointed counsel of further duties

On 22 August 2022, the trial court entered nonsecure custody orders removing the boys from their aunt and uncle's home because "[t]he Juvenile[s were] slapped by the Guardian/Uncle eight times for acting up at the Grandmother's house[,] [and] [t]he Guardian/Aunt does not allow the Juveniles to meet with their (sic) therapist without her present." The court placed the boys with paternal Grandmother. In orders signed on 8 September 2022, but not filed until over four months later on 9 January 2023, the trial court dissolved paternal aunt's and uncle's guardianship.

The trial court conducted a permanency planning hearing on 8 December 2022. In the order from that hearing, the court found Respondent-mother had continued to make progress with her case plan. She had obtained adequate housing and completed a mental health assessment, but she had not secured verified employment, was not consistently attending visitation or family therapy, and had tested positive for cocaine and marijuana. The court set a primary permanent plan of reunification with a secondary plan of guardianship.

The trial court held the next permanency planning hearing on 15 June 2023. In its order from the hearing, the court found Respondent-mother had continued to make progress on her case plan, including obtaining consistent employment, attending college to study business, and completing a comprehensive clinical addendum. However, the court noted Respondent-mother had failed to follow the

recommendations of prior assessments and had failed to use additional visitation provided to her. The court changed the primary permanent plan to guardianship with a relative with a secondary plan of reunification.

Another permanency planning hearing was held on 14 September 2023. Prior to the hearing, DSS and the GAL submitted reports requesting that the trial court grant guardianship to Grandmother. During the hearing, Respondent-mother's counsel specifically argued it was premature to consider guardianship in light of her recent progress.

The trial court entered a permanency planning order on 5 October 2023, in which it found "[b]y clear, cogent, and convincing evidence" Respondent-mother was unfit and was acting inconsistently with her constitutionally-protected status as a parent. The court granted guardianship of Thomas and Marcus to Grandmother based on its conclusion that such placement would be in their best interests. Respondent-mother appeals.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27 and 7B-1001(4) (2023).

## III. Standard of Review

Appellate "review of a permanency planning review order 'is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law.'" *In re H.A.J.*, 377 N.C. 43, 49, 855 S.E.2d

464, 469 (2021) (citation omitted). At a permanency planning hearing, any evidence may be considered, "including hearsay evidence as defined in [N.C. Gen. Stat. §] 8C-1, Rule 801, or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-906.1(c) (2023).

"The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re H.A.J.*, 377 N.C. at 49, 855 S.E.2d at 469. Unchallenged findings of fact are "deemed to be supported by the evidence and are binding on appeal." *In re J.C.M.J.C.*, 268 N.C. App. 47, 51, 834 S.E.2d 670, 673-74 (2019) (citation omitted). This Court reviews conclusions of law *de novo,* and freely disregards or replaces erroneous conclusions. *Id.*

## IV. Guardianship

Respondent-mother challenges the trial court's award of guardianship to paternal Grandmother. She contends many of the trial court's findings of fact are unsupported by the evidence and the remaining findings do not support the court's conclusion she was unfit and had forfeited her constitutionally-protected status as a parent.

## A. Standard of Review

"The trial court's legal conclusion that a parent acted inconsistently with his constitutionally protected status as a parent is reviewed *de novo* to determine whether the findings of fact cumulatively support the conclusion and whether the

conclusion is supported by clear and convincing evidence." *In re I.K.*, 377 N.C. 417, 421, 858 S.E.2d 607, 611 (2021).

## B. Preservation

We address whether Respondent-mother preserved this issue for appellate review. Generally, "Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *In re T.P.*, 217 N.C. App. 181, 186, 718 S.E.2d 716, 719 (2011) (citation omitted); *see also* N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

"A parent's argument concerning his or her paramount interest to the custody of his or her child, although afforded constitutional protection, may be waived on review if the issue is not first raised in the trial court." *In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495, 497-98 (2022); *see also In re J.M.*, 384 N.C. 584, 603-04, 887 S.E.2d 823, 835-36 (2023).

However, an objection is not possible when the trial court enters written findings of facts and conclusions of law after a hearing is concluded.

> [A] trial court's findings of fact are not evidence, and a parent may not "object" to a trial court's rendition of an order or findings of fact, even if these are announced in open court at the conclusion of a hearing. If a party has presented evidence and arguments in support of her

position at trial, has requested that the trial court make a
ruling in her favor, and has obtained a ruling from the trial
court, she has complied with the requirements of Rule 10
and she may challenge that issue on appeal. An appeal is
the procedure for "objecting" to the trial court's findings of
fact and conclusions of law.

*In re B.R.W.*, 278 N.C. App. 382, 399, 863 S.E.2d 202, 215 (2021) (overruling

contentions a mother had waived challenges to determinations she was unfit and had

acted inconsistently with her constitutionally protected status as a parent made in a

permanency planning order entered months after the hearing concluded), *aff'd*, 381

N.C. 61, 871 S.E.2d 764 (2022).

The court had concluded:

By clear, cogent, and convincing evidence, the Court finds
that the Respondent Parents have waived their paramount
Constitutional rights to care, custody, and control of the
children, because the Respondent Parents are unfit, have
neglected the children's welfare, and have acted
inconsistently with their Constitutionally protected status.

*See Id.* 381 N.C. at 82, 871 S.E.2d at 775-76.

The trial court had erroneously labeled this determination a finding of fact

when "it is, in reality, a conclusion of law[.]"). *Id.*

## C. No Waiver

Here, the trial court's determination Respondent-mother had forfeited her

constitutionally-protected status as a parent was made in a permanency planning

order entered many months after the court had conducted a permanency planning

hearing. At that hearing, Respondent-mother had specifically argued against the

guardianship plan, requesting that the trial court delay granting guardianship so she could continue to make previously-documented progress on her case plan.

Respondent-mother's counsel argued she was making progress, and while "progress was slow, . . . it's speeding up, and she's been making a lot of progress, great strides in recent months." Counsel further argued it was "premature to consider guardianship" as Respondent-mother was "on the right track to get her kids back. And if the C[ourt] . . . grants guardianship, that's sort of -- that avenue is blocked."

Respondent-mother could not object at the hearing to the trial court's determinations not yet entered in a written order. *See Id.* Respondent-mother's counsel specifically argued it was premature to consider guardianship in light of her recent progress. Respondent-mother sufficiently preserved her challenge to the trial court's findings and conclusions she was unfit and had acted inconsistently with her constitutionally-protected status by asserting her opposition to guardianship at the permanency planning hearing. *See Id.*

DSS also argues Respondent-mother's argument is waived by the doctrine of collateral estoppel based on the court previously making the same determination when it awarded guardianship of Thomas and Marcus to their paternal aunt and uncle in March 2021.

We categorically reject this argument for several reasons. First, the 30 March 2021 permanency planning order does not include a finding or conclusion

Respondent-mother was unfit or had acted inconsistently with her constitutionally-protected status as a parent.

Second, even if the trial court had made such a determination, Respondent-mother's conduct prior to the March 2021 permanency planning hearing was not dispositive or conclusive of whether she was acting inconsistently with her protected status when the trial court granted guardianship to Grandmother in October 2023. *See In re R.P.*, 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017) (Whenever custody is granted to a nonparent, "a finding that a parent is unfit or acted inconsistent with his or her constitutionally protected status [at that time] is nevertheless required, even when a juvenile has previously been adjudicated neglected and dependent.").

We address the merits of Respondent-mother's challenge to the trial court's determination she had acted inconsistently with her constitutionally-protected status as a parent. *Id.*

### D. Findings of Fact

Respondent-mother challenges several findings of fact made by the trial court to support its conclusion are unsupported by the evidence. "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding[,]"and "may consist of any evidence, including hearsay evidence[,] or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most

appropriate disposition." *In re J.M.*, 384 N.C. at 591, 887 S.E.2d at 828. (quoting N.C. Gen. Stat. § 7B-906.1(c) (ellipsis omitted)).

### 1. Finding of Fact 11

Respondent-mother first challenges the portion of finding of fact 11 which states "[a]t the previous court date of June 15 [2023], [Respondent-mother] had a positive result for cocaine from a hair follicle screen. Respondent-mother maintains she has not used cocaine for over a year and does not have an explanation for the positive hair follicle result for cocaine."

Respondent-mother argues this finding was unsupported because during her testimony at the permanency planning hearing, she hypothesized the positive drug test was "the result of her dreadlocks hairstyle." The drug test at issue shows Respondent-mother had tested positive for cocaine and cocaine metabolites in a 12 June 2023 "Hair 5 Drug Panel Test[.]" At the 14 September 2023 hearing, Respondent-mother testified she had not used cocaine in over a year.

When she was asked to explain the positive test, Respondent-mother stated: "I don't know. Maybe it's because of the hair, . . . I have dreadlocks, so I don't really know how that works." When Respondent-mother was asked "[s]o you're not really sure how you came to test positive for cocaine on that date, but you think it may be an issue with your hair?" she responded, "I guess so, yes." Respondent-mother's testimony to explain why she had tested positive for cocaine was uncertain and conjectural, rather than a definitive explanation.

The challenged portion of finding 11 is supported by competent evidence. To the extent Respondent-mother testified to an explanation for her positive drug test, the trial court found her explanation not credible. As credibility determinations rest within the trial court's purview, we do not disturb its finding Respondent-mother had failed to explain her positive drug test. *See In re J.I.G.*, 380 N.C. 747, 754, 869 S.E.2d 710, 715 (2022) ("The assignment of weight and evaluation of the credibility of the evidence resides solely within the purview of the trial court[.]").

### 2. *Finding of Fact 14*

Respondent-mother next challenges finding of fact 14: "Family therapy for the Juveniles and the Respondent Mother is scheduled to begin in September." This statement is anticipatory and is not based on facts admitted into evidence. Respondent-mother argues "[t]o the extent this finding of fact intimates that Mother had not already been participating in family therapy with the juveniles, it should be disregarded."

The DSS social worker testified as follows:

> Q: Okay. When is family therapy for the juveniles and Respondent-Mother scheduled to begin?
>
> A: Okay, family therapy just resumed back because [the therapist], in June, she transitioned to a new agency. So it just resumed back September the 2nd was their — the children's first appointment. She made one for [Respondent-mother] on September the 16th. They go on Saturday. But in between trying to get the therapist set up, [the grandmother] and the children had preplanned vacations, so that's why everything is starting late, because

of the transition with the therapist and they had preplanned trips.

Finding 14 concerning family therapy was scheduled to begin in September is not supported as written. The testimony, as opposed to the question asked, clearly supports Respondent-mother's assertion "family therapy just resumed" and delays were due to "trying to get the therapist set up" and "because of the transition with the therapist and they had preplanned trips." We reject and disregard this "finding" as unsupported.

### 3. *Findings of Fact 22, 24, and 25*

Respondent-mother also challenges findings of fact 22, 24, and 25, which address her overall progress and her ability to care for the children in the near future are unsupported. Finding 22 states Respondent-mother "has not made adequate progress within a reasonable period of time under the plan. It is not possible to place the Juveniles with her at this time or within the next six months." Finding 24 states "Mother has acted in a manner inconsistent with the emotional health and safety of the Juveniles." Finally, finding 25 states "[c]ontinued efforts to reunite the Juveniles with the Respondent Mother would clearly be unsuccessful or inconsistent with the children's health, safety, and need for a safe, permanent home within a reasonable period of time."

Respondent-mother asserts these findings are not supported by other findings of fact or evidence at the permanency planning hearing. She argues they disregard

the uncontested evidence she had made substantial progress with her case plan, had negative urine drug screens, had attended visitations, was employed, had stable housing, had attended therapy, and had successfully completed a required parenting class and seven of eight other parenting classes.

Respondent-mother's arguments fail to fully address deficiencies in meeting her case plan goals, even though she had been working on the case plan for multiple years. While Respondent-mother did test negative in urine drug screens, she recently had an unexplained positive hair follicle drug screen in June 2023, just a few months before the last permanency planning hearing.

As to visitation, the GAL report, accepted into evidence at the hearing, indicated Respondent-mother had inconsistently attended visitation and had regularly missed birthdays and holidays with her children. The trial court also found when Respondent-mother did attend visitation with her children, she asked Marcus if he wanted to live with her, which "made him uncomfortable[,]" and then she later "denied that this conversation took place." This incident purportedly had upset Marcus and made him "worried that he had been wrong to tell his grandmother" about it. Respondent-mother "admitted that she told [Marcus] that he would be coming home soon." These conversations between a parent and a child to express hope and anticipation to be reunited in the future does not support a finding of unfitness or conduct inconsistent with her parental rights.

As to her employment, the GAL report indicated Respondent-mother "has a

pattern of switching employment on a regular basis[,]" and the trial court found Respondent-mother was only working part-time at the time of the permanency planning hearing. This testimony does not support a finding of unfitness or conduct inconsistent with her parental rights.

Concerning housing, the trial court found "Mother reside[d] in a four-bedroom home managed by the Greenville Housing Authority." Other evidence in the record indicates this subsidized housing *may be* in jeopardy because Respondent-mother did not have custody of her children. DSS does not show Respondent-mother's home is not a safe, permanent home, or is either unsuitable or poses a risk to her children.

Concerning therapy, the trial court found respondent-mother had "completed three individual therapy appointments, and a medication management appointment." Other evidence reported Respondent-mother had been inconsistent with her therapy in the past. The DSS social worker testified, "But in between trying to get the therapist set up, [the grandmother] and the children had preplanned vacations, so that's why everything is starting late, because of the transition with the therapist and they had preplanned trips."

Concerning parenting classes, uncontested evidence shows Respondent-mother had completed her first set of parenting classes in March 2020. She agreed in late 2022 to take another parenting class, and she had completed seven of eight sessions of that class by the September 2023 permanency planning hearing.

The foregoing and prior permanency planning findings and evidence reflect

Respondent-mother had made substantial progress on the requirements of her case plan to address the reasons for her sons' removal. Under these circumstances and properly admitted evidence, the trial court did not credit uncontested evidence or adjudicate the competent conflicting evidence to support a conclusion Respondent-mother had not made adequate progress.

The trial court had concluded Marcus and Thomas could not be returned to her care in the next six months, Respondent-mother had acted in a manner inconsistent with the health and safety of Marcus and Thomas, or future reunification with Respondent-mother would be unsuccessful or inconsistent with Marcus' and Thomas' health, safety, and need for a safe, permanent home within a reasonable period of time. In light of the unsupported findings, we vacate and remand for further findings or proceedings. *See In re A.J.*, 386 N.C. 409, 417, 904 S.E.2d 707, 715 (2024).

### E. Constitutionally-Protected Status

Respondent-mother argues the trial court's findings of fact did not support its conclusion that she had waived her constitutionally protected parental status; and, as a result, the trial court erred in applying the best interest standard when awarding guardianship to Grandmother.

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a natural parent's paramount constitutional right to custody and control of his or her children and ensures that the government may take a child away from his or her natural parent only upon a showing that the parent is unfit to have custody or where the parent's conduct is inconsistent with his or her

constitutionally protected status.

*In re B.R.W.*, 381 N.C. at 77, 871 S.E.2d at 775-76 (citation and quotation marks omitted). If the trial court finds by clear and convincing evidence and lawfully concludes the parent has acted inconsistently with her constitutionally-protected status as a parent, the court may proceed to apply the "best interest of the child test" in awarding custody to a nonparent. *In re D.A.*, 258 N.C. App. 247, 250, 811 S.E.2d 729, 732 (2018).

"[T]here is no bright line rule beyond which a parent's conduct meets this standard; instead, we examine each case individually in light of all the relevant facts and circumstances and the applicable legal precedent." *In re B.R.W.*, 381 N.C. at 82, 871 S.E.2d at 779. "In conducting the required analysis, evidence of a parent's conduct should be viewed cumulatively." *Id.* at 83, 871 S.E.2d at 779.

In this case, Thomas and Marcus were removed from Respondent-mother's home in July 2019 and were adjudicated as neglected juveniles in December 2019. In the ensuing years, Respondent-mother made uncontested progress on her case plan. By the time of the permanency planning hearing in June 2023, Respondent-mother had obtained housing, obtained part-time employment, and engaged in some services. Respondent-mother had completed the first parenting class and seven of eight sessions of the second and her agreed-upon most recent parenting classes. Respondent-mother returned a positive drug screen in June of 2023, which she denied but could not offer a credible explanation,

Viewing Respondent-mother's uncontested evidence and behaviors cumulatively, the trial court remaining supported findings do not support a lawful conclusion she is unfit or forfeited her constitutionally-protected parental status to award guardianship and cease further hearings. We do not disturb the trial court's weighing of conflicting evidence, holding DSS to its burden of proof by clear, cogent, and convincing evidence.

> [W]hen an appellate court determines that the trial court's findings of fact are insufficient, the court must examine whether there is sufficient evidence in the record that could support the necessary findings. If so, the appropriate disposition is to vacate the trial court's order and remand for entry of a new order. This permits the trial court, as finder of fact, to decide whether to enter a new order with sufficient findings based on the record or to change its conclusions of law because the court cannot make the necessary findings.

*In re A.J.*, 386 N.C. at 417, 904 S.E.2d at 715 (internal citations omitted).

## V. Conclusion

"It is not the function of this Court to reweigh the evidence on appeal." *In re J.M.*, 271 N.C. App. 186, 194, 843 S.E.2d 668, 674 (2020). Whenever custody is granted to a nonparent, "a finding that a parent is unfit or acted inconsistent with his or her constitutionally protected status [at that time] is nevertheless required, even when a juvenile has previously been adjudicated neglected and dependent." *In re R.P.*, 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017).

"The trial court's legal conclusion that a parent acted inconsistently with his

constitutionally-protected status as a parent is reviewed *de novo* to determine whether the findings of fact cumulatively support the conclusion and whether the conclusion is supported by clear and convincing evidence." *In re I.K.*, 377 N.C. 417, 421, 858 S.E.2d 607, 611 (2021).

The trial court's order awarded guardianship and directed no further review hearings occur. This effectively relieved DSS, the GAL, and Respondent-mother's appointed counsel of further duties to provide services toward reunification. The trial court's order awarding permanent guardianship is vacated and remanded for further findings and proceedings. *Id.*; *In re R.P.*, 252 N.C. App. at 304, 798 S.E.2d at 430. *It is so ordered.*

VACATED AND REMANDED.

Judges WOOD and GORE concur.