MURPHY, Judge.
 

 *548
 
 Respondent mother ("Patty")
 
 [1]
 
 and respondent father ("Isaac") appeal from an order ceasing reunification efforts and awarding guardianship of the minor children I.K. ("Iliana") and K.M. ("Kevin") to the maternal grandmother. Because the trial court's findings do not address Respondents' fitness, whether they acted inconsistent with their constitutionally protected status, or why reunification
 
 *361
 
 efforts should cease, we vacate the trial court's 7 November 2017 order and remand for further proceedings.
 

 BACKGROUND
 

 Kevin was born to Patty in May 2008. Kevin's father is not a party to this appeal. Iliana was born to Respondents in December 2012. On 10 November 2014, the Rockingham County Department of Social Services received a report that Respondents lived in a "hoarder home" that was unsafe, Respondents sold their food stamps, Kevin was small for his age, there was fighting in the home, and Respondents were smoking marijuana and snorting Percocet. The Rockingham County Department of Social Services investigated this report, but no services were recommended at the time.
 

 In 2015, the Orange County Department of Social Services ("DSS") received two reports alleging that Patty had snorted pills while Kevin was in the home, and that Patty and her brother were involved in a domestic dispute that resulted in the brother shaking and hitting Kevin. At that point, Respondents were provided in-home services to address concerns of substance use, mental health, and domestic violence. On 8 January 2016, Patty was sentenced to 45 days in jail for shoplifting and violating her probation. Patty received another 45 day sentence in April 2016 after a drug test conducted by her probation officer tested positive for cocaine. At that time, Respondents placed Iliana with the maternal grandmother. For the previous five years, Kevin had been residing with his maternal grandmother. On 5 August 2016, Patty informed a DSS social worker that Respondents were being evicted from their home and were homeless.
 

 Due to concerns regarding Respondents' unstable housing, substance abuse, and lack of engagement in substance abuse treatment services, DSS filed juvenile petitions on 10 August 2016 alleging that Kevin and Iliana were neglected and dependent juveniles. DSS obtained nonsecure custody that same day. Following a 15 September 2016 hearing, the trial
 
 *549
 
 court entered an order on 13 October 2016 adjudicating the juveniles dependent, keeping temporary legal and physical custody with the maternal grandmother. The order required Respondents to submit to random drug screens, seek substance abuse treatment services, and follow any treatment recommendations. After a permanency planning hearing on 2 March 2017, the trial court entered an order on 27 March 2017 establishing a primary permanent plan of guardianship with the maternal grandmother and a secondary plan of reunification with Respondents. Following a 5 October 2017 permanency planning hearing, the trial court entered a 7 November 2017 order ceasing reunification efforts and awarding guardianship of the children to the maternal grandmother. Respondents timely appealed the 7 November 2017 order.
 

 ANALYSIS
 

 A. Guardianship
 

 Respondents first contend that the trial court erred in awarding guardianship of the children to the maternal grandmother without first finding that Respondents were unfit to parent or had acted inconsistently with their constitutionally protected status as parents. We agree.
 

 "A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child."
 
 Price v. Howard
 
 ,
 
 346 N.C. 68
 
 , 79,
 
 484 S.E.2d 528
 
 , 534 (1997) (citations omitted). "[A] natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status."
 
 In re D.M.
 
 ,
 
 211 N.C. App. 382
 
 , 385,
 
 712 S.E.2d 355
 
 , 357 (2011) (alteration in original) (quoting
 
 David N. v. Jason N.
 
 ,
 
 359 N.C. 303
 
 , 307,
 
 608 S.E.2d 751
 
 , 753 (2005) ). "[T]o apply the best interest of the child test in a custody dispute between a parent and a nonparent, a trial court must find that the natural parent is unfit or that his or her conduct is inconsistent with a parent's constitutionally protected
 
 *362
 
 status."
 
 In re B.G.
 
 ,
 
 197 N.C. App. 570
 
 , 574,
 
 677 S.E.2d 549
 
 , 552 (2009) (citations omitted).
 

 DSS and the children's guardian
 
 ad litem
 
 ("GAL") do not refute Respondents' contention that the trial court failed to make the required finding, but instead argue that Respondents waived appellate review of this argument by not raising the issue at the hearing. DSS and the GAL cite this Court's previous pronouncement that "a parent's right to findings regarding her constitutionally protected status is waived if the
 
 *550
 
 parent does not raise the issue before the trial court."
 
 In re R.P.
 
 , --- N.C. App. ----, ----,
 
 798 S.E.2d 428
 
 , 430-31 (2017). However, in
 
 R.P.
 
 we also held that there is no waiver where the party "was not afforded the opportunity to raise an objection at the permanency planning review hearing."
 

 Id.
 

 at ----,
 
 798 S.E.2d at 431
 
 . In that case, the trial court indicated at a permanency planning review hearing that it would determine guardianship at the next hearing.
 

 Id.
 

 at ----,
 
 798 S.E.2d at 431
 
 . Then, at the next hearing, the trial court did not allow any evidence to be presented concerning guardianship, stating that guardianship had been determined at the prior hearing.
 

 Id.
 

 at ----,
 
 798 S.E.2d at 431
 
 .
 

 In the present case, the trial court did not permit arguments. At the conclusion of the hearing, Patty's counsel asked:
 

 "Judge, can we be heard?"
 

 To which the trial court responded:
 

 I've heard from you. I know what you want done. Appreciate it.
 

 Thus, the trial court prevented the Respondents from making arguments concerning Respondents' constitutionally protected status as parents, and Respondents cannot be said to have waived their contention on appeal. As to the merits of Respondents' contention, the trial court did not make a finding that Respondents were unfit or had acted inconsistent with their constitutionally protected status. Absent such a finding, the trial court erred in applying the best interest of the child test to determine that guardianship with the maternal grandmother was in the children's best interests. As a result, we vacate that portion of the trial court's order awarding guardianship and remand.
 

 B. Reunification
 

 Respondents next contend that the trial court erred in ceasing reunification efforts. We conclude that the trial court's findings are insufficient to support its conclusion that reunifications efforts should cease.
 

 "Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law."
 
 In re R.A.H.
 
 ,
 
 182 N.C. App. 52
 
 , 57-58,
 
 641 S.E.2d 404
 
 , 408 (2007) (citation omitted). "The trial court's conclusions of law are reviewable
 
 de novo
 
 on appeal."
 
 In re T.R.M.
 
 ,
 
 208 N.C. App. 160
 
 , 162,
 
 702 S.E.2d 108
 
 , 110 (2010) (citation omitted).
 

 *551
 
 "At the conclusion of each permanency planning hearing, the judge shall make specific findings as to the best permanent plans to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C.G.S. § 7B-906.1(g) (2017). "Reunification shall remain a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C.G.S. § 7B-906.2(b). However, the trial court failed to make findings pursuant to N.C.G.S. § 7B-901(c) or to find that reunification efforts clearly would be unsuccessful or inconsistent with the juvenile's health or safety. To cease reunification in this way:
 

 [T]he court shall make written findings as to each of the following, which shall demonstrate lack of success:
 

 (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
 

 (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
 

 (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
 

 *363
 
 (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.
 

 N.C.G.S. § 7B-906.2(d).
 

 Here, the trial court made the following findings of fact relevant to its decision to cease reunification efforts:
 

 7. It is not possible for the juveniles to be returned home in the immediate future or within the next six (6) months and in support thereof, the court specifically finds:
 

 a) Respondent parents have been involved with [DSS] since October 2015 due to concerns about substance use, domestic violence, and unstable housing.
 

 b) Respondent parents have made minimal progress on their case plan objectives, which led to a petition being filed in August 2016.
 

 c) Respondent parents' compliance improved after the court date in March 2017, however they each have missed one drug screen since the last hearing.
 

 *552
 
 d) [DSS] has concerns that [Patty] may be abusing prescription medication. [Patty] has attended substance abuse groups at Freedom House.
 

 e) Respondent parents had a domestic altercation in October 2016. [Patty] attended the first component of domestic violence counseling classes at the Compass Center in Chapel Hill, began the second component in June, 2017 and continues to attend.
 

 f) The parents' minimal progress, including the lack of full engagement with services and refusal to comply with all drug screens as set forth above, is not adequate to continue to pursue reunification as a primary or secondary plan.
 

 g) While respondent parents have demonstrated some cooperation with their case plan and remained involved in their case, their insufficient progress for reunification demonstrates that they are acting inconsistently with the juveniles' health and safety.
 

 ....
 

 18. Further reunification efforts would be inconsistent with the juveniles' health and safety.
 

 Respondents appear to challenge finding 7(b), but neither explains how the finding lacks evidentiary support. At various points in their briefs, both cite to examples in the record of their compliance with their case plans, but these mostly occurred after the juvenile petitions were filed. Read in context, finding 7(b) notes Respondents' lack of progress on their case plans
 
 prior to
 
 the juvenile petitions being filed. Respondents do not contest that they made minimal progress on their case plans prior to August 2016.
 

 Isaac challenges the statement in finding 7(c) that Respondents "each have missed one drug screen since the last hearing." We agree that this finding is unsupported by the evidence. The last hearing in this case was on 15 June 2017, and the evidence at the 5 October 2017 hearing showed that Respondents had last missed a drug screen on 5 June 2017. We therefore disregard this portion of finding 7(c) in our analysis.
 

 Patty next appears to challenge finding 7(d), essentially arguing that DSS's concerns regarding her abuse of prescription medication were unfounded. However, Patty does not contest that DSS
 
 had
 
 such
 
 *553
 
 concerns, which is what the finding actually states. Patty fails to demonstrate that finding 7(d) is unsupported by the evidence.
 

 Respondents broadly challenge the statements in findings 7(f) and (g) that they made "minimal progress" and "insufficient progress for reunification." While we find evidence in the record that could support such findings, we also find evidence which tends to show that Respondents were making reasonable progress on their case plans; the trial court's findings are not sufficiently specific to allow this Court to determine what evidence the trial court relied on in reaching this ultimate finding. The trial court found that Respondents' compliance with their case plans had improved since March 2017, and did not make any findings as to Respondents' conduct since that time that could demonstrate that Respondents were making minimal or insufficient progress. The only specific finding made by the trial court that could
 
 *364
 
 support its ultimate finding of minimal progress relates to one incidence of domestic violence between Respondents occurring in October 2016, which, in light of the finding relating Respondents' improved compliance since March 2017, is not sufficient alone to show that Respondents had made insufficient progress by the 5 October 2017 hearing. Thus, the order itself does not make findings sufficient to demonstrate what the trial court looked to in determining that Respondents had made minimal progress toward reunification.
 

 The order did incorporate by reference the DSS and GAL court reports submitted for the 5 October 2017 hearing. The statements in those reports regarding Respondents' compliance with their case plans and progress toward reunification, however, are decidedly mixed. The DSS report noted that Patty's case plan asked her to "engage in substance abuse treatment services, including residential treatment if possible, and to submit to random drug screens as necessary," to "participate in mental health treatment," and to "participate in domestic violence education." Evidence suggesting that reunification would be inconsistent with the children's health and safety included that Patty twice appeared to be under the influence of drugs during family events in June and July 2017, complied with eighteen of twenty-eight random drug screens, tested positive for hydrocodone in January 2017, last refused a drug screen on 5 June 2017, and sought to obtain her father's pain medication in September 2017.
 

 In contrast to this evidence, Patty had been regularly attending weekly substance abuse group meetings and individual therapy sessions since February 2017, signed up for and completed parenting classes
 
 *554
 
 without being asked to do so, and had regularly attended domestic violence classes since April 2017. Furthermore, Patty's January 2017 drug screen was the only one in which she tested positive, and she produced a prescription for the hydrocodone.
 

 The DSS report notes that Isaac's case plan asked him to address issues of substance abuse. Evidence suggesting that reunification would be inconsistent with the children's health and safety included that Isaac appeared to be under the influence of drugs during a family event in July 2017, complied with sixteen of twenty-seven random drug screens; tested positive for oxycodone in January 2017, last refused a drug screen on 5 June 2017, and was unwilling to participate in domestic violence classes until it was court ordered in May 2017.
 

 In contrast to this evidence, Isaac regularly met with an individual counselor addressing substance abuse once a month, began attending domestic violence classes in June 2017, and signed up for and completed parenting classes without being asked to do so. Isaac's January 2017 drug screen was the only one in which he tested positive.
 

 As to both parents, the reports noted that their living situation was appropriate, and "[a]ttendance at visits with [the] children has been excellent." Thus, the evidence contained in the DSS and GAL reports, while indicating concern with the parents extensive history of substance abuse and sustainability of Respondents recent improvements, fails to support a finding or conclusion that reunification efforts should cease, and the trial court's own findings provide little indication as to what clear and convincing evidence it found persuasive in concluding that reunification would be inconsistent with the children's health and safety.
 

 The trial court held a permanency planning hearing on 15 June 2017 and determined that reunification efforts should continue. Since that time, while there was one occasion where Respondents were suspected of being under the influence of drugs, Respondents neither failed nor refused a drug screening. There had been no reported incidents of domestic violence, and both were attending classes to address their issues. At the 5 October 2017 permanency planning hearing, this evidence requires the trial court to adjudicate and have made additional evidentiary findings demonstrating why reunification efforts should cease at that point. "Without adjudicated findings of fact this Court cannot conduct a meaningful review of the conclusions of law and 'test the correctness of [the trial court's] judgment.' "
 

 *365
 

 In re L.L.O.
 
 , --- N.C. App. ----, ----,
 
 799 S.E.2d 59
 
 , 66 (2017) (alteration in original) (quoting
 
 In re M.K.
 
 ,
 
 241 N.C. App. 467
 
 , 471,
 
 773 S.E.2d 535
 
 , 538 (2015) ). As a result,
 
 *555
 
 we must vacate the permanency planning order and remand to the trial court.
 
 [2]
 

 CONCLUSION
 

 We conclude that the trial court failed to make the required finding that Respondents were unfit or had acted inconsistent with their constitutionally protected status as parents. Absent such a finding, the trial court erred in applying the best interest of the child test to determine that guardianship with the maternal grandmother was in the children's best interests. As a result, we must vacate that portion of the trial court's order awarding guardianship and remand for further findings.
 

 In addition, we conclude that the trial court's findings are not sufficient to support its conclusion that reunifications efforts should cease. We vacate and remand for the trial court to make additional evidentiary findings. In the event the trial court on remand again determines that reunification efforts should cease, the court is directed to make additional findings in support of that determination. On remand, "[w]e leave to the discretion of the trial court whether to hear additional evidence."
 
 In re F.G.J.
 
 ,
 
 M.G.J.
 
 ,
 
 200 N.C. App. 681
 
 , 695,
 
 684 S.E.2d 745
 
 , 755 (2009).
 

 VACATED AND REMANDED.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 Pseudonyms are used throughout this opinion to protect the identity of juveniles and for the ease of reading. See N.C. R. App. P. 3.1(b).
 

 [2]
 

 Patty additionally argues, "The trial court lacked competent evidence to conclude that [Patty's] visitation with the minor children required supervision." However, Patty cites to no authority in support of this contention and therefore has abandoned the issue on appeal. N.C. R. App. P. 28(b)(6).